Stephen Rhodes on behalf of the Appellant, ICD, Ice Cream Distributors. Why don't you pull that mic a little closer to you and speak right up. Okay. Thank you. I think it's completely fair to say that the only real issue of any doubt is whether this doctrine of extraterritorial application applies or not. In other words, the notion that my client was not a state entity, a small business from Kentucky, not a California resident. And the law is clear that there is standing for such a non-resident under the UCL when there is wrongful conduct occurring inside California. The district court acknowledged that there was wrongful conduct occurring in California. I would remind the court that the defendant's headquarters is in Oakland. And the complaint, Second Amendment, alleges that it was from California that the conspiracies were conceived and directed. The court down below, though, found that only a small amount, an unspecified small amount of wrongful conduct occurred in California. And that evidently was enough for the court to conclude that the doctrine eliminated standing in this case. Well, let's assume we're past that. You're here on your unfair competition law claim, correct? That is correct, Your Honor. And you filed an initial complaint and then an amended complaint. I believe there are two amended complaints. So you're now on complaint three, if you will. Yes, it's the second amended complaint. And the second amended is the one we focus on, correct? That's correct. Okay. Does it plead entitlement to restitution or seek injunctive relief? Absolutely. Yes. And that's part of what's surprising about the district court's decision. It is absolutely clear. Where in the second amended complaint does it do that? If I could take, by the way, Your Honor, if I could keep half my time for my rebuttal. This is the presiding judge. You're here. Just as long as you keep track of it, that's fine. Okay, thank you. Thank you. B.  But ER 123, the second amended complaint alleges in the prayer. What paragraph is that, sir? It's paragraph D, as in David. I'm quoting, restitution and disgorgement of all unjust profits. I don't think that could be any clearer. That's restitution. That's exactly what it says. Where in the complaint does it say you're entitled to restitution, not just that that's what you want, your client wants? Your Honor, I'll be frank. I've never thought of it in those terms. And frankly, it's because I didn't think it was necessary. The reason being that I thought it was clear enough from the prayer that restitution was being sought. If I could remind the court, the question is whether this pleading alleges facts sufficient to go forward to allow this client to have standing, this plaintiff to have standing. And there is a misunderstanding from below that the complaint alleges nothing but entitlement to damages. That is not correct. And I would ask, I would remind the court, too, that even though there's a standard statement of damage being sought, that does not negate this request for restitution. It still pleads restitution as a remedy. Now, I don't know exactly what would need to be alleged to show entitlement to restitution. The entitlement, I guess, I would say, Your Honor, to answer your question, is the entitlement to restitution is contained inside, within the basic allegations of the UCL cause of action. It doesn't have, the complaint does not have any sentence that says that the plaintiff is entitled to restitution because of colon fill in the blank. Instead, I believe that it's implicit in the rest of the allegations of the amended complaint. Go ahead. Any other questions, Your Honor? Not right now. Thank you. Judge Fletcher, any questions? No. Thank you. Good morning. May it please the court. Good morning. My name's Gilliland of Kilpatrick Townsend for Appley Dryers Grand Ice Cream. When appellant ICD would not agree to sell exclusively Dryers brand ice cream in Kentucky and Indiana, Dryers decided that it would distribute its own product itself in that territory. This is a routine and a lawful business decision by Dryers that has now spawned seven years of litigation in three different courts. ICD has lost every step of the way, and it's now time to end this legal odyssey. There are three separate and independent, equally persuasive reasons to affirm Judge Wilkins' decision dismissing this case. First, the only claim remaining, the only one appealed now, is a violation of California's unfair competition law. But this court has made clear, and the California Supreme Court has made clear, that the unfair competition law does not apply to conduct outside of California involving plaintiffs outside of the state of California. That is what occurred here, and that is why the UCL does not apply. Secondly, even if the statute did apply, Business and Professions Code Section 17200, the only two available remedies are an injunction or restitution. Here, the plaintiff is not entitled to an injunction, does not even claim to be, and there's no basis to obtain restitution here either. Your opposing counsel just pointed into the part of the Second Amendment complaint that says he alleges restitution. What more did he need to do? Well, he needed to allege that there's some basis on which he should be entitled to receive restitution. Now, restitution under the Business and Professions Code 17200 is a particular thing that this court made specifically clear in its decision in First Alliance Mortgage Company. There, this court wrote, quote, in the UCL context, restitution means the return of money to those persons from whom it was taken. Now, in order to plead entitlement to restitution in this case, then, ICD would have been required to plead that Dreyer's has some of its money, some of ICD's money, that Dreyer's obtained from ICD by reason of unfair competition. There is no such allegation in this complaint, despite the fact the plaintiff had three different tries at it. The only potentially relevant paragraph in the complaint is paragraph 80. And in that paragraph, ICD says that it bought ice cream and equipment from Dreyer's. That's the only allegation whatsoever about the transfer of money from ICD to Dreyer's. But there's no allegation that ICD did not receive the ice cream from Dreyer's, did not resell it. In fact, as the record shows, Dreyer's motion for judicial notice shows that there's currently an outstanding judgment by Dreyer's against ICD for a quarter of a million dollars. It's ICD that owes money to Dreyer's, not the other way around. What counsel just said was that Dreyer's did something bad and it caused his client to lose money and his client wants it back. But it does not want the money back from Dreyer's. There's no allegation anywhere that Dreyer's has anything that belongs to ICD that should be restored to it. Rather, ICD went out of business. They made a business choice to not become an exclusive distributor. That turned out to be a bad choice. It went out of business. But going out of business is not restitution. And the California Supreme Court was very clear about that in Korea Supply v. Lockheed. In that case, the Supreme Court rejected plaintiff's 17200 claim about a lost contract saying, quote, compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victim. Close quote. Throughout the second amended complaint here, plaintiff claims entitlement to damages. They use the restitution once in the prayer for relief. But there's nothing in the complaint which shows that they're entitled to receive restitution as defined in California's UCL. Moreover, after Judge Wilkins ruled in this case, the California Supreme Court and then this court, per Judge William Fletcher, ruled that the unfair competition law does not apply to conduct outside of California when the plaintiff is outside of California, even if, as here, the decision to implement the practice was made in California. In Sullivan v. Oracle, Oracle, a headquarter down in Redwood City, decided to classify a certain category of employees as instructors. And Oracle in California believed that instructors were not required to be paid overtime. But that turned out to be incorrect under the Fair Labor Standards Act. There, as here, the plaintiffs tried to import that into a UCL claim in order to get around a statute of limitations. Let me just ask you about that. Isn't directing someone to commit a tortious act or unlawful act somewhere else qualitatively different from the mistaken classification in Sullivan? What do you need here in California? What's the quantum of unlawful conduct that a party must commit in California to be in violation or liable under the UCL? Your Honor, I would submit that there has to be conduct. That here, all that is alleged is that a decision was made. That's exactly the same thing that happened in Oracle, in Sullivan. A decision was made to not pay overtime. Here, a decision was made at Dreyer's headquarters in Oakland to not go forward with ICD as a distributor any longer, since it would not accept the terms to become an exclusive distributor. That was the decision. All the actions, all the alleged bad acts that supposedly occurred thereafter, when the accounts were transferred from ICD to Dreyer's, all the conduct occurred outside of the state of California, and the only impacted individual was a company that was a Kentucky-based company. Now, it's not as though ICD had no remedy, of course. They filed a case in Kentucky first, but they lost that case. And now Dreyer's has a judgment against ICD, and now they're trying a second bite at the apple, and they're trying to use California law to apply to conduct that occurred in Kentucky and in Indiana to a Kentucky resident. That extends the California unfair competition law much, much too far. It would open the door to all kinds of California cases. Finally, even if you were to look at the complaint and decide that plaintiff does have standing and that did allege an entitlement to restitution, there's no basis pled, despite having three chances, to win under 17-200. This Court is very well familiar with the three prongs, unfair, unlawful, and fraudulent conduct that would constitute a 17-200 violation. Here, poor Judge Wilkin had to wrestle with an extremely odd pleading in paragraph 117, where plaintiff specifically alleged that by reason of Dreyer's alleged Sherman Act violations, alleged RICO Act violations, its various and sundry other unlawful conduct under other statutes, that that was the basis, those were the predicate acts for the use of government. But those are gone now. Those are gone now. Those are all gone. She dismissed them all with prejudice, and ICD did not appeal them. So there cannot be any basis for unlawful conduct. The courts have ruled that Dreyer's did nothing wrong, so there's no unlawful conduct at all. Nor is there anything unfair here, because if you have unfair competition, a CELTAC decision makes clear that the plaintiff has to plead and prove an incipient violation of the antitrust laws and harm to competition. The only thing that's happened here is that ICD went out of business. There was definitely harm to ICD. But the courts are very, very clear that harm to an individual competitor is not harm to competition. This court, as far back as 1976 in Knutson v. Daily Review, said that a termination is not unlawful because of some adverse effect on the distributor's business, even if the effect is the elimination of the distributor from the market. That's all that occurred here. The competition in the ice cream market continues to rage apace. ICD asserted claims under Kentucky law, under federal law, and under California law. It lost in every court over the past seven years. It lost because Dreyer's did not do anything wrong. Dreyer's gave ICD the chance to be an exclusive distributor under terms and conditions suggested by Dreyer's. ICD did not want to accept those conditions. It had the freedom to choose to not deal with Dreyer's. Likewise, Dreyer's had the freedom to choose to not deal any longer with ICD. That's all that it did. Judge Wilken properly dismissed the Second Amendment complaint, and we ask that the court affirm her decision. Thank you. Are there any questions? Thank you very much for your time. I'm not quite sure where to begin. The reason I asked to reserve half of my time was because I anticipated what happened, and that is there were a lot of statements just made that are wrong, flat wrong. For example, counsel just argued that ICD lost the case in Kentucky. That is absolutely false. The case instead was removed here by Dreyer's own motion and motion to enforce a choice of law clause. That's why it's in California. That's why 17200 is alleged because of what Dreyer's did. There's no ruling against ICD on the merits in Kentucky. Are you talking about this case or other cases? Good question. I'm talking about this case. It was removed to California. You don't dispute that there was another case in which these two parties went at each other? I don't dispute that for a second, Your Honor. And your client lost. That is correct, Your Honor. But I want to get to another point. I don't know how to say this more politely, but so what? The question is what was alleged in this case. The question is not what happened in other cases. And, by the way, Your Honor, everything the counsel said about these other cases is outside the record. I mean, the record is I know that the counsel submitted a supplemental record of his own, but that was just to bring in all this extra stuff, things that don't have anything to do with what was alleged. That's the question before the 12B6 motion. Okay. Well stated. How do you respond to his argument that there is a difference between damage and restitution and that restitution requires an allegation that his client took something of value from your client and refuses to return it? Your Honor, the answer I will premise first on. This is what's called a pregnant silence. No, I'm being thoughtful, Your Honor. I certainly encourage that. Thank you. The law is clear that in this situation the court is to look at the complaint in the light most favorable to the plaintiff. If that's done, I don't think there's any dispute, any fair dispute, any real honest dispute that the complaint alleges that Dreyers did things to my client that constituted losing money from my client and that Dreyers has it. And in your mind that's sufficient for restitution? Oh, absolutely. Okay. Absolutely. The Sullivan case, real quickly, another incorrect statement. Sullivan involved one act, one occurrence, that's a quote, that took place in California, and that was a misclassification of employees, salaried, non-salaried, part-time, whatever. The simple act that occurred in California was the misclassification of the employees. That the court held, the California Supreme Court held at the request of the Ninth Circuit deciding this case, the Supreme Court held that that did not constitute an unlawful act. And of course it doesn't. What was unlawful, the court held, was the failure to pay over time, and that occurred outside California. In this case, we have allegation after allegation of conspiracies being conceived and directed from California. It's pulling the trigger. It is the Bin Laden analogy, as I mentioned, with all due respect to the victims of 9-11. I mean, he was not in Washington, D.C. or New York. You're out of time. Thank you, Your Honor. Thank you. Thank you. The case is now submitted. Thank you for your arguments here today.
judges: Fletcher, Hawkins, Murguia